**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                     No. 95-5718

DONALD JARRELL,
Defendant-Appellant.

Appeal from the United States District Court
for the Southern District of West Virginia, at Beckley.
Elizabeth V. Hallanan, District Judge.
(CR-95-42)

Argued: September 27, 1996

Decided: December 3, 1996

Before MURNAGHAN, Circuit Judge, SMITH, United States
District Judge for the Eastern District of Virginia, sitting by
designation, and MICHAEL, Senior United States District Judge for
the Western District of Virginia, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**COUNSEL:** Hunt Lee Charach, Federal Public Defender, Charleston,
West Virginia, for Appellant. Michael O. Callaghan, Assistant United
States Attorney, Charleston, West Virginia, for Appellee. **ON
BRIEF:** C. Cooper Fulton, Assistant Federal Public Defender,
Charleston, West Virginia, for Appellant. Rebecca A. Betts, United
States Attorney, Charleston, West Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Defendant Jarrell was charged in a seven count indictment of attempting to conceal repeated discharges of fecal coliform pollutants into the public waters, thereby polluting adjacent residential neighborhoods. Defendant pled guilty to the third count of the indictment, which accused defendant of illegally discharging a pollutant above the level permitted by a National Pollutant Discharge Elimination System (NPDES) permit, in violation of 33 U.S.C.§ 1319(c)(2)(A). After obtaining the customary presentence report, the trial court sentenced defendant to thirty months' imprisonment. During sentencing, defendant argued that the court was misapplying the sentencing guidelines, a contention that was rejected by the court. Defendant now appeals the lower court's decisions regarding application of the sentencing guidelines.

Section 2Q1.3 of the sentencing guidelines establishes the base and specific offense levels for crimes that involve the mishandling of environmental pollutants. The commentary to § 2Q1.3 also permits a trial judge to enhance or reduce a defendant's specific offense level upon consideration of certain relevant factors. On appeal, defendant argues that the court erred by assessing a two-point upwards assessment under § 2Q1.3 commentary note four and a two-point upwards assessment under § 2Q1.3 commentary note seven. Specifically, defendant contends that the two 2-point increases are duplicative, unjustified, and unreasonable. We reject this argument.

The trial court established that defendant was subject to a base offense level of six. It then used specific offense characteristics to increase the total offense level. The court increased the total level by six under § 2Q1.3(b)(1)(A), and by four under§ 2Q1.3(b)(4), for a total offense level of sixteen. The court then increased the total offense level by four, assessing two additional points based on com-

2

mentary note four, and two additional points based on commentary note seven.

Under the guidelines, the court may include a two-point enhancement under § 2Q1.3(b)(1) if the court feels that such an enhancement is appropriate after considering "the harm resulting from the emission, release or discharge, the quantity and nature of the substance or pollutant, the duration of the offense and the risk associated with the violation." 1995 U.S.S.G. § 2Q1.3 commentary n.4. Similarly, the guidelines permit a two-point enhancement under § 2Q1.3(b)(4) if, after considering "the nature and quantity of the substance involved and the risk associated with the offense, such an adjustment appears warranted." Id. § 2Q1.3 commentary n.7. Defendant argues that the court cannot assess both enhancements because they are both based on the same set of operative facts and considerations; namely, the quantity and nature of the substance and the risk involved. He ignores the fact that each enhancement has a different objective -- the first to punish "an ongoing, continuous, or repetitive discharge, release or emission of a pollutant into the environment," the second to punish a discharge that occurs "without a permit or in violation of a permit." Compare id. § 2Q1.3(b)(1)(A) with id. § 2Q1.3(b)(4). As this court has previously recognized, the guidelines' "incremental adjustment schedule" permits multiple enhancements under § 2Q1.3. See United States v. Ellen, 961 F.2d 462, 468-69 (4th Cir.), cert. denied, 506 U.S. 875 (1992).

Moreover, the district court explained in an extended colloquy that the nature and seriousness of the offense justified each enhancement. At one point, the court observed, "I could go on and on, but just to indicate that this, in my opinion, is an extremely serious offense. It was a health hazard. It was extremely nasty. It was so derelict on your part, so deliberately derelict on your part." This court notes that on at least three occasions, the Environmental Protection Agency conducted "grab sampling" of waste water areas around the treatment plant and neighborhood subdivision. One sample contained 230,000 parts of fecal coliform per 100 milliliters of waste water. The second sample contained 750,000 parts of fecal coliform per 100 milliliters of waste water. The third sample contained 830,000 parts of fecal coliform per 100 milliliters of waste water. Defendant's operating permit allowed only 400 parts per 100 milliliters of waste water.

3

Given the egregiousness of defendant's violations, it can hardly be said that his offenses were of such a minor nature as to prompt this court to hold that the district court abused its discretion in enhancing defendant's specific offense level.

Defendant also argues that the district court erred in finding that a six-point specific offense level was justified given that defendant pled guilty to only one count of the indictment which did not lead to a repetitive discharge. Determining that the entire breadth of defendant's "conduct involved substantially the same harm and the offense behavior was on-going and continuous in nature," the lower court assessed a six-point specific offense level under§ 2Q1.3(b)(1)(A). Defendant argues that the offense to which he pled does not meet the requirements for grouping under § 3D1.2, and that as a result, the counts to which he did not plead guilty cannot be considered as relevant conduct for the purposes of determining whether defendant's offense was of an ongoing nature.

In determining the applicable specific offense characteristic, a court may consider "all acts and omissions . . . that were part of the same course of conduct or common scheme or plan as the offense of conviction" if such an act was "of a character for which § 3D1.2(d) would require grouping of the multiple counts." 1995 U.S.S.G. § 1B1.3(a)(2). Under § 3D1.2(d), even though certain counts may not be specifically listed for grouping, they should nonetheless be grouped if appropriate; "a case-by-case determination must be made upon the facts of the case and the applicable guidelines." In one of the examples cited to support such grouping, the commentary notes that three convictions for discharging toxic substances from a single facility would be grouped. Id. § 3D1.2 commentary n.6. The commentary indicates that the drafters intended this type of offense to be of a character for which § 3D1.2(d) would require grouping. Therefore, even though defendant was convicted of only one discharge violation, the other discharges to which he did not plead guilty may be considered for these purposes. See id. § 1B1.3 commentary n. 8 (noting that for the purposes of determining relevant conduct, it is unnecessary for defendant to have been convicted of all counts). Because the relevant conduct includes the discharges to which defendant did not plead guilty, they are nonetheless relevant for the purposes of determin-

4

ing the specific offense level. Accordingly, it was appropriate for the district court to assess a 6-point specific offense level under § 2Q1.3(b)(1)(A).

Finally, defendant argues that his 1975 state arson conviction should not have been counted in determining his criminal history. He finished serving his sentence in 1979. Defendant contends that because the instant offense took place more than fifteen years later, the former offense cannot be counted in the criminal history.

Defendant's entire argument is premised on the belief that the other discharges to which he did not plead guilty should not be counted in relevant conduct. As previously explained, these counts are counted in determining relevant conduct. For the purposes of determining when the fifteen year period should run, the court must look to the earliest relevant conduct. Because count four of the indictment is relevant conduct that took place in 1992, the former offense of arson is properly counted within the fifteen year period. Accordingly, the district court's calculation of defendant's criminal history level was correct.

For these reasons, defendant's appeal will be denied and the district court's decision affirmed.

AFFIRMED

5